IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SECURITY NATIONAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) CAPITOL CITY BANK & TRUST COMPANY, ) ) ) Defendant. ) | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff Security National Insurance Company ("Security National"), by and through the undersigned counsel, and hereby brings this Complaint for Declaratory Judgment against Capitol City Bank & Trust Company ("Capitol City") pursuant to 28 U.S.C. § 2201. For its Complaint for Declaratory Judgment, Security National hereby alleges as follows:

### I.   THE PARTIES

1.   Security National is an entity incorporated under the laws of the State of Delaware. Security National's principal place of business is located in Dallas,

Texas. Security National is registered and/or authorized to transact business in the State of Georgia.

2. Upon information and belief, Capitol City is an entity incorporated under the laws of the State of Georgia. Capitol City's principal office is located at 562 Lee Street SW, Atlanta, Georgia 30310-1928. Capitol City may be served with process through its registered agent, George G. Andrews, 562 Lee Street SW, Atlanta, Georgia 30310-1928.

## II.   JURISDICTION AND VENUE

3. This Court has the power to determine the parties' respective rights and other legal obligations as requested herein pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. Capitol City's demand on Security National, discussed below, creates an actual controversy for this Court to adjudicate.

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

5. Venue is proper before this Court pursuant to 28 U.S.C. § 90(a)(2) and 28 U.S.C. § 1391(b) because all relevant actions and transactions to the claim occurred within this judicial district, and because Capitol City is located within this judicial district.

### III.     FACTUAL ALLEGATIONS

### THE BOND

6. Security National issued Financial Institution Bond No. SFB1104257 00 (the "Bond") naming Capitol City as insured. A true and accurate copy of the Bond is attached hereto as **Exhibit "1."**

7. Security National issued the Bond for an effective Bond Period of February 1, 2013 to February 1, 2014 (the "Bond Period").

8. The Bond includes a Financial Institution Bond Rider Schedule, which states that "[t]his rider is attached to and forms a part of Financial Institution Bond No.: SFB1104257 00."

9. The Rider Schedule further states that "[i]t is agreed that the following Rider(s) is/are a part of this Bond and is amended as follows."

10. The Rider Schedule and Bond includes a Loss Sustained Rider (Endorsement BIFIB0052 1211), which states as follows:

> It is agreed that the Bond is amended as follows:
>
> 1. This Bond covers only loss(es) sustained by the Insured listed below, on or after the date stated below, and prior to the termination or cancellation of this Bond provided, however, that such loss is discovered during the period that this Bond is in force.
>
> 2. This Bond excludes any loss(es) arising out of or in any way involving any act, error, omission,

792027.1                                         3

> committed or alleged to have been committed prior to the date stated below or transaction, casualty or event, occurring or allegedly occurring prior to the date stated below.
>
> Date: 2/1/2013

11. Insuring Agreement A of the Bond (Dishonesty), which is subject to a $1,000,000 Single Loss Limit and a $100,000 Single Loss Deductible, provides coverage, in relevant part, for:

> Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others.
>
> Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent to:
>
> (a) cause the Insured to sustain such loss, or
> (b) obtain improper financial benefit for the Employee or another person or entity.

12. Insuring Agreement B of the Bond (On Premises), which is subject to a $1,000,000 Single Loss Limit and a $100,000 Single Loss Deductible, provides coverage, in relevant part, for:

> (1) Loss of Property resulting directly from:
>
> (a) robbery, burglary, misplacement, mysterious unexplainable disappearance and damage or destruction of the Property, or
> (b) theft, false pretenses, or common-law or statutory larceny committed by a person present in an office or on the Premises of the Insured,

while the Property is lodged or deposited within offices or Premises located anywhere, except those offices set forth in Item 7 of the Declaration.

13. Exclusion (h) of the Bond precludes coverage for:

[L]oss caused by an Employee, except when covered under Insuring Agreement (A) or when covered under Insuring Agreement (B), (C) or (R) and resulting directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property.

14. Definition (r) of the Bond defines "Employee", in pertinent part, to mean:

[A]n officer or other Employee of the Insured, while employed in, at or by any of the Insured's offices or Premises covered under this Bond, and a Guest student pursuing studies or duties in any of said offices or Premises.

## CAPITOL CITY'S ALLEGED LOSS

15. On or about March 7, 2013, Capitol City provided a Property Loss Notice to Security National stating that Capitol City "[r]ealized that employee theft was taking place."

16. Also on or about March 7, 2013, Capitol City submitted a Proof of Loss to Security National seeking coverage under Insuring Agreement A (Dishonesty) and Insuring Agreement B (On Premises) of the Bond, in the amount of $933,200.00.

17. As stated more fully in the Proof of Loss, Capitol City sought coverage for a purported loss from stemming from the theft of cash by two Capitol City employees – Ju-Von Koon and Jamil Ludvig – from Capitol City's branch facility at the Atlanta-Hartsfield International Airport in Atlanta, Georgia (the "Airport Branch").

18. According to the Proof of Loss, Capitol City learned of a "potential exception" involving one of its tellers at Capitol City's Airport Branch on February 21, 2013.

19. According to the Proof of Loss, Capitol City performed a cash audit of its vault at the Airport Branch on February 28, 2013. After allowing for all entries to be posted, the audit revealed missing cash.

20. On March 4, 2013, Capitol City suspended two of its tellers, Koon and Ludvig, for possible embezzlement of the missing funds.

21. In its Proof of Loss, Capitol City described the scheme of Koon and Ludvig as follows:

> The scheme for defrauding the Bank appears to be entries made after the banking day (cash ins and outs, reversals and cash outs between two employees in lieu of the actual cash on hand). The discovery resulted from a ticket not posting on February 27, 2013 and employees in the balancing area notifying Management.

22. Capitol City's Proof of Loss lists March 4, 2013 as the date that it discovered the purported loss.

23. On June 11, 2013, the United States Attorney for the Northern District of Georgia filed a Criminal Information against Koon and Ludvig in the United States District Court for the Northern District of Georgia, case no. 1:13-cr-00235-JOF. A true and accurate copy of the Criminal Information is attached hereto as **Exhibit "2."**

24. Count One of the Criminal Information for Conspiracy to Commit Bank Embezzlement, 18 U.S.C. § 371, states, in pertinent part:

> 1. **From an unknown date, but at least by in or about January 2009,** through in or about March 4, 2013, in the Northern District of Georgia and elsewhere, defendants JU-VON KOON (hereinafter referred to as "KOON"), and JAMIL LUDVIG (hereinafter referred to as "LUDVIG"), knowingly combined, conspired, conferated, agreed, and had a tacit understanding with each other and with other persons known and unknown to the United States Attorney to commit bank embezzlement, purloining and willfully misapplying the sum of at least $200,000.00 of the moneys entrusted to the custody and care of Capitol City Bank and Trust Company, in that the defendants did steal cash from their teller drawers and Capitol City Bank and Trust Company's vault and did create and process cash-out tickets and cash-in tickets in order to keep their teller drawers and the general ledger balanced and to avoid detection of the theft, in violation of Title 18, United States Code, Section 656.

(emphasis added).

25.     Pursuant to paragraph 1 of the Bond's Loss Sustained Rider, coverage under the Bond is limited to losses sustained by Capitol City on or after February 1, 2013 and discovered by Capitol City during the Bond Period.

26.     Upon information and belief, the majority (if not all) of the alleged theft and defalcations by Koon and/or Ludvig occurred prior to the February 1, 2013 beginning date of the Bond Period.

27.     Upon information and believe, Capitol City did not sustain any loss on or after February 1, 2013.

28.     Capitol City has not demonstrated that it sustained any loss on or after February 1, 2013.

29.     Any losses sustained by Capitol City for the acts of theft or defalcations that Koon and/or Ludvig committed prior to February 1, 2013 are excluded from coverage under paragraph 2 of the Loss Sustained Rider.

30.     Koon and Ludwig were Employees of Capital City as definition (r) of the Bond defines that term.

31.     Pursuant to Exclusion (h), any loss to Capital City caused by Koon and/or Ludwig is excluded from coverage under the Bond, except to the extent that loss is covered by Insuring Agreement A of the Bond.

32.  Pursuant to Exclusion (h), any loss to Capital City caused by Koon and/or Ludwig is excluded from coverage under Insuring Agreement (B) of the Bond because Capital City's loss did not result directly from misplacement, mysterious unexplainable disappearance or destruction of or damage to Property.

33.  Security National continues to fully reserve any and all rights, remedies, and defenses at law, in equity, and under the Bond and its endorsements in relation to the Proof of Loss and the allegations contained therein.

34.  Security National's filing of this Complaint is not intended to waive any limitation or defense to coverage under the Bond with regard to the Proof of Loss and the allegations therein.

35.  Additional conditions, limitations, and exclusions may exclude or limit coverage for Capitol City with regard to the Proof of Loss and the allegations therein.

## COUNT I – DECLARATORY JUDGMENT

36.  Security National hereby incorporates by reference the allegations contained in Paragraphs 1 through 35 of this Complaint as if set forth fully herein.

37.  Capitol City cannot bear its burden of establishing that it sustained a loss on or after February 1, 2013.

38. To the extent Capitol City seeks coverage under the Bond for losses that arise out of or in any way involve acts of theft or defalcation committed by Koon and/or Ludvig prior to the February 1, 2013, Capitol City's claim is barred, in whole or in part, by paragraph 2 of the Loss Sustained Rider.

39. Capitol City cannot bear its burden of establishing all elements of coverage under Insuring Agreement A of the Bond.

40. Capitol City cannot bear its burden of establishing all elements of coverage under Insuring Agreement B of the Bond.

41. To the extent Capitol City seeks coverage under Insuring Agreement B of the Bond, Capitol City's claim is barred, in whole or in part, by Exclusion (h) of the Bond.

42. Security National is entitled to a judicial declaration of rights and obligations under the Bond, if any, related to the allegations in the Proof of Loss.

43. Security National is entitled to a judicial declaration that it has no obligation to Capitol City, under the Bond or otherwise, with regard to the allegations in the Proof of Loss.

44. Security National also references and incorporates all other terms, conditions and limitations of the Bond and, to the extent of their applicability determined upon discovery, are asserted herein.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Security National respectfully requests the following relief:

a. That the proper process be issued and that Capitol City be required to answer this Complaint in the time prescribed to them by law;

b. For an Order declaring Security National's rights and obligations under the Bond, if any, related to the allegations in the Proof of Loss;

c. For an Order declaring that Security National has no obligation to Capitol City, under the Bond or otherwise, with regard to the allegations in the Proof of Loss; and

d. For such further relief as this Court deems just and proper.

Respectfully submitted, this 8th day of November, 2013.

                          MILLS PASKERT DIVERS

                          */s/ P. Keith Lichtman*
                          P. Keith Lichtman, Esq.
                          Georgia Bar No. 521321
                          1355 Peachtree Street, N.E., Suite 1550
                          Atlanta, GA 30309
                          (404) 870-8200   Telephone
                          (404) 870-3080   Facsimile
                          klichtman@mpdlegal.com

                          *Attorney for Plaintiff Security National Insurance Company*